IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMIEL ASGHEDOM, individually and as administrator for THE ESTATE OF ERMIAS ASGHEDOM p/k/a "NIPSEY HUSSLE",<br><br>    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>    Defendants. | Case No. 21-cv-04741 |

**COMPLAINT**

Plaintiff Samiel Asghedom, individually and as administrator for the Estate of Ermias Asghedom p/k/a "Nipsey Hussle" ("Nipsey Hussle" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel and other merchandise, using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Samiel Asghedom is a resident of California currently residing in Los Angeles, California. Samiel Asghedom is the brother of the late Grammy-nominated rapper and community leader Ermias Asghedom, professionally known as "Nipsey Hussle". Samiel Asghedom is also the representative for the Estate of Ermias Asghedom p/k/a "Nipsey Hussle".

5. The late Nipsey Hussle is a musical icon, whose meteoric rise from the poor streets of South Los Angeles to the height of the entertainment and hip-hop world cemented his place in music history and stardom. Nipsey Hussle was also a beloved community leader, whose talents transcended music and entertainment, as he fought for economic and educational opportunities for the residents of communities stricken with urban blight.

6. Nipsey Hussle has earned numerous accolades for his music, including Grammys for Best Rap Performance and Best Rap/Sung Performance, as well as being nominated for Best Rap Album. Moreover, Nipsey Hussle's debut album *Victory Lap* reached number 2 on the *Billboard* 200, with numerous hits on the *Billboard* Hot 100.

7. Despite Nipsey Hussle's untimely murder in 2019, his popularity and fame have only continued to grow. His legacy includes tributes ranging from local government to entertainment stars and athletes, such as renaming the intersection of Slauson Avenue and Crenshaw Boulevard near Hussle's store Marathon Clothing to "Nipsey Hussle Square". There

have also been several tribute songs dedicated to Nipsey Hussle, including *Nipsey Blue*, by Snoop Dogg, and *Deep Reverence*, by Big Sean.

8. Following the success of his mixtapes *The Marathon* and *The Marathon Continues*, these phrases became synonymous with the Nipsey Hussle brand. Nipsey Hussle developed this into a clothing and accessories line called "The Marathon (Clothing)", eventually opening the Marathon Clothing store. Products sold under the Nipsey Hussle brand include clothing, headwear, and accessories.

9. Nipsey Hussle branded products are distributed and sold to consumers throughout the United States, including in Illinois, through various affiliates and through the themarathonclothing.com webstore.

10. Plaintiff incorporates a variety of distinctive marks in the design of its various Nipsey Hussle products. As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks. Plaintiff has also registered its trademarks with the United States Patent and Trademark Office. Nipsey Hussle products often include at least one of Plaintiff's registered trademarks. Often several of Plaintiff's marks are displayed on a single Nipsey Hussle product. Plaintiff uses its trademarks in connection with the marketing of the Nipsey Hussle products, including the following marks which are collectively referred to as the "NIPSEY HUSSLE Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 4,917,142 | THE MARATHON (CLOTHING) | For: Shirts, t-shirts, sweaters, beanies, hats, sweatsuits, varsity jackets, pants, socks in class 025. |

4

| | | |
|---|---|---|
| 4,588,483 | *Crenshaw* (logo) | For: Shirts, t-shirts, sweaters, beanies, hats, shorts, pants in class 025. |
| 6,211,634 | SOUTH CENTRAL STATE OF MIND | For: Hats, hoodies, jackets, shirts and short-sleeved shirts, sweatshirts, athletic shirts, baseball caps and hats, gift packages sold as a unit consisting primarily of a sweatshirt and also including a photo frame, a coffee mug, and a tote bag, sports shirts, sweat jackets, tee-shirts in class 025. |
| 4,494,798 | NIPSEY HUSSLE | For: Audio and video recordings featuring music and artistic performances; Downloadable musical sound recordings; Musical sound recordings in class 009.<br><br>For: Entertainment services in the nature of live musical performances in class 041. |
| 4,912,192 | (ASCT logo) | For: Pre-recorded audio tapes, discs and cassettes, video tapes, digital audio and audio video tapes and discs, CDs, and phonograph records featuring music and entertainment in the nature of music videos; musical sound and video recordings; sound and video recordings featuring recorded theatrical productions; downloadable videos featuring music and entertainment in the nature of music videos; downloadable ring tones, music, mp3s featuring music, graphics, and |

5

| | | |
|---|---|---|
| | | photographs for wireless communication devices in class 009.<br><br>For: Production of music; distribution of musical sound recordings; fan clubs; audio recording production; record production; videotape production; entertainment services, namely, providing a web site featuring musical performances, musical videos, related film clips, photographs, and other multimedia musical entertainment materials; entertainment services, namely, providing on-line reviews of music, musical artists and music videos; entertainment services, namely, providing prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network in class 041. |

11. The above U.S. registrations for the NIPSEY HUSSLE Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The NIPSEY HUSSLE Trademarks have been used exclusively and continuously by Plaintiff for many years and have never been abandoned. The registrations for the NIPSEY HUSSLE Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the NIPSEY HUSSLE Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the NIPSEY HUSSLE Trademarks included in the above table.

12. The NIPSEY HUSSLE Trademarks are exclusive to Plaintiff and are displayed extensively on Nipsey Hussle products and in Plaintiff's marketing and promotional materials.

6

The Nipsey Hussle brand has been extensively promoted and advertised at great expense. In fact, over the years, Plaintiff, or third parties on Plaintiff's behalf, have expended millions of dollars in advertising, promoting, and marketing featuring the NIPSEY HUSSLE Trademarks, as well as significant time and other resources. As a result, products bearing the NIPSEY HUSSLE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

13. The NIPSEY HUSSLE Trademarks are distinctive when applied to the Nipsey Hussle products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. The NIPSEY HUSSLE Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the NIPSEY HUSSLE Trademarks is of incalculable and inestimable value to Plaintiff.

14. For years, Plaintiff has operated an e-commerce website where it promotes and sells genuine Nipsey Hussle products at themarathonclothing.com, including apparel and other merchandise. The themarathonclothing.com website features proprietary content, images and designs exclusive to Plaintiff.

15. Plaintiff's innovative marketing and product designs, combined with the immense popularity of Nipsey Hussle, have made the NIPSEY HUSSLE Trademarks famous marks. The widespread fame, outstanding reputation, and significant goodwill associated with the Nipsey Hussle brand have made the NIPSEY HUSSLE Trademarks invaluable assets of Plaintiff.

16. Plaintiff, or third parties on the Plaintiff's behalf, have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the NIPSEY HUSSLE Trademarks. As a result, products bearing the NIPSEY HUSSLE Trademarks are

widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Nipsey Hussle products have become among the most popular of their kind in the world.

**The Defendants**

17. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

18. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

19. The success of the Nipsey Hussle brand has resulted in its significant counterfeiting. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for

sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

20. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to being selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have

many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–187.

21. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

22. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the NIPSEY HUSSLE Trademarks, and none of the Defendants are authorized retailers of genuine Nipsey Hussle products.

23. Many Defendants also deceive unknowing consumers by using the NIPSEY HUSSLE Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for e-commerce stores relevant to consumer searches for Nipsey Hussle products. Other e-commerce stores operating under Seller Aliases omit using the NIPSEY HUSSLE Trademarks in the item title to

evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Nipsey Hussle products.

24. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

27. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28. Counterfeiters such as Defendants typically operate multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29. Defendants are working in active concert to knowingly and wilfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and wilfully used and continue to use the NIPSEY HUSSLE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

30. Defendants' unauthorized use of the NIPSEY HUSSLE Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and

has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered NIPSEY HUSSLE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The NIPSEY HUSSLE Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products sold or marketed under the NIPSEY HUSSLE Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the NIPSEY HUSSLE Trademarks without Plaintiff's permission.

34. Plaintiff is the exclusive owner of the NIPSEY HUSSLE Trademarks. Plaintiff's United States Registrations for the NIPSEY HUSSLE Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the NIPSEY HUSSLE Trademarks, and are wilfully infringing and intentionally using counterfeits of the NIPSEY HUSSLE Trademarks. Defendants' willful, intentional and unauthorized use of the NIPSEY HUSSLE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known NIPSEY HUSSLE Trademarks.

37. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

40. By using the NIPSEY HUSSLE Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

41. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the NIPSEY HUSSLE Trademarks and brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the NIPSEY HUSSLE Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Nipsey Hussle product or is not authorized by Plaintiff to be sold in connection with the NIPSEY HUSSLE Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Nipsey Hussle product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the NIPSEY HUSSLE Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the NIPSEY HUSSLE Trademarks and damaging Plaintiff's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including

the NIPSEY HUSSLE Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, at Plaintiff's choosing, the registrant of the Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap") shall take any steps necessary to transfer the Domain Names to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the NIPSEY HUSSLE Trademarks;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the NIPSEY HUSSLE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the NIPSEY HUSSLE Trademarks;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 7th day of September 2021.　　　Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Isaku M. Begert
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
ibegert@gbc.law

*Counsel for Plaintiff Samiel Asghedom, individually and as administrator for The Estate of Ermias Asghedom p/k/a "Nipsey Hussle"*